# EXHIBIT 4

## IN THE DISTRICT COURT OF MAYES COUNTY
## STATE OF OKLAHOMA

1)  S.I., a minor, by and through her parent and §
    next friend TAMMY BARK; §
2)  S.B., a minor, by and through her parent and §
    next friend MANDI BENNETT; §
3)  L.B., a minor, by and through her parent and §
    next friend KIM BURGESS; §
4)  T.H., a minor, by and through her parent and §
    next friend LEAH HURRY; §
5)  S.P., a minor, by and through her parent and §
    next friend BILLIE PAIT; §
6)  M.M., a minor, by and through her parent and §
    next friend KATHERINE POLK; §
7)  I.C., a minor, by and through her parent and §
    next friend KRISTEN SHATSWELL; §   CASE NO: CJ-2020-183
8)  A.J., a minor, by and through her parent and §
    next friend, KATHI SMITH; §   *Judge Shawn S. Taylor*
9)  E.S., a minor, by and through her parent and §
    next friend, KELLIE GUESS §
10) S.C., a minor, by and through her parent and §
    next friend MISTY CALHOON; §
11) K.P., a minor, by and through her parent and §
    next friend JESSICA PACKARD; and, §
12) B.M., a minor, by and through her parent and §   JURY TRIAL DEMANDED
    next friend, JOLENE LINDSAY, §
                                              §
        Plaintiffs, §
    v. §
                                              §
1)  INDEPENDENT SCHOOL DISTRICT §
    NO. 16 OF MAYES COUNTY, §
    OKLAHOMA, a/k/a SALINA SCHOOL §
    DISTRICT, a/k/a SALINA PUBLIC §
    SCHOOLS; and, §
2)  JOHN Q. HORNER, an individual. §
                                              §
        Defendants. §

FILED IN THE DISTRICT COURT
MAYES CO., OKLAHOMA

APR 2 9 2021

JENIFER CLINTON, COURT CLERK
BY _____ DEPUTY

## PLAINTIFFS' FIRST AMENDED PETITION

Plaintiffs, all female minors by and through their parents and next of friends and all by and through their attorneys of record allege and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      At all relevant times pertinent hereto, Plaintiffs were and are citizens of the State of Oklahoma and residents of Mayes County, Oklahoma.

2.      Defendant Independent School District No. 16, *a/k/a* Salina School District, *a/k/a* Salina Public Schools ("School District") is a public educational institution located in Mayes County, Oklahoma. The School District is an Oklahoma school district organized and existing under the laws of the State of Oklahoma and has its principal office in Mayes County, Oklahoma. The School District receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 - 1688. The School District may be served with process at its principal place of business: Attn: Larry Barry, Clerk of the Board of Education, 212 E. Ferry Street, Salina, OK 74365.

3.      Defendant John Q. Horner ("Horner") was a teacher at the Salina Middle School. John Q. Horner may be served at his place of residence: 113 Oakwood Drive, Tahlequah, OK 74464.

4.      Defendant Horner was acting within the course and scope of his employment, except as to those claims that are intentional torts.

5.      The District Court of Mayes County has subject matter and personal jurisdiction over the Defendant and venue is proper pursuant to 12 O.S. §§ 133, 134, and 143.

## COMPLIANCE WITH O.G.T.C.A. NOTICE REQUIREMENT

6.      Plaintiffs have complied with the notice provisions of the Oklahoma Governmental Tort Claims Act by providing notice of this claim to the School District.

## **FACTUAL BACKGROUND**

7.     The School District should provide a safe learning environment for its students. They failed to do so.

8.     The School District failed to provide its students an environment free of a sexual predator, Defendant Horner.

9.     While on the Salina Middle School grounds and during school hours, Defendant Horner repeatedly preyed on female students, even after parents and students informed the School District of the sexual predator's misconduct via the School District's agents and employees.

10.     All of the Plaintiffs were victims of this sexual predator.

11.     The sexual predator, Defendant Horner, inappropriately touched all victims.

12.     John Q. Horner ("Horner") was a teacher at Salina Middle School.

13.     Horner's Oklahoma teaching certificate number was 238359.

14.     Horner had over thirty years of teaching experience and was most recently employed by the School District.

15.     On or about March 15, 2019, a teenage girl came forward with accusations of Horner touching her inappropriately and making statements that made her feel uncomfortable.

16.     After she came forward, the School District stated they had completed an internal investigation with a finding of no further investigation needed.

17.     The weekend after the girl came forward, the Salina Police Department was contacted by several parents of other teenage girls, who had similar allegations about Horner and his actions at the school.

3

18.     The Salina Police Department began an investigation after the parents came forward.

19.     As part of the investigation, Salina Police Department interviewed at least ten (10) teenage girls that provided information about Horner's inappropriate behavior between October 2018 and March 2019.

20.     The police investigation found claims regarding Horner inappropriately touching or making inappropriate comments dating back to at least October 2018 and continuing up until March of 2019.

21.     The police investigation discovered that Horner's behavior was so bad that upper classmates warned their lower classmates to be prepared for Horner to make them uncomfortable while in his classroom.

22.     Specifics of the investigation determined that Horner had touched girls in various areas including their shoulders, lower back, buttocks and inner thighs.

23.     For example, T.H. was complaining about having sore calves. Horner had T.H. sit at his desk and began massaging her calves but moved his hands up to her thigh area. The bell rang to change classes, but Horner told T.H. to stay and continued to rub her legs.

24.     On another occasion, S.I. had on a pair of jeans with a rip in them that was high in the upper thigh of the jeans. Horner placed his finger in the hole and made a circular motion while his finger was in the hole for 5-10 seconds.

25.     I.C. had her thighs and lower back touched by Horner. I.C. would be touched by Horner to the point of annoyance and would intentionally move seats or away to avoid Horner when she was in his classroom.

26.     S.P. had her thigh rubbed by Horner while he helped her with class work in his classroom. She has also witnessed Horner touch students inappropriately.

27.     E.S. was subjected to Horner placing his hand on her leg. He would start low on the leg and move high on the leg to the thigh. Sometimes he would squeeze her leg while doing it in his classroom.

28.     A.J. was subjected to Horner touching her leg and moving his hand up to her thigh.

29.     S.B. was subjected to Horner touching her leg on multiple occasions.

30.     Horner asked L.H. when it would be his turn to be her boyfriend. Horner had gotten L.H.'s phone number and texted her enough times that she blocked him. Horner told L.H. that she looked like his wife and that his wife was one of his students when he was a teacher at another school.

31.     On or near January 16, 2020, a Probable Cause Affidavit for Arrest Warrant was issued for Horner relating to the anticipated charges for the offenses of Lewd or Indecent Proposals to a child under the age of 16, a felonious violation of 21 O.S. § 1123.

32.     The School District has previously been on notice of Horner's inappropriate actions but ignored the notice.

33.     The School District received notice as early as 2014 of Horner's actions.

34.     For example, in 2014 a female teenage student told her mother and grandmother of Horner inappropriately touching her and making her feel uncomfortable.

35.     The grandmother immediately went to the Salina Middle School and spoke with the principal.

36.     The principal informed the grandmother that she believed the teenage girl was embellishing her story because the teenage girl was performing poorly at math.

37.     After the grandmother spoke with the principal of Salina Middle School, the mother of the teenage girl spoke with the same principal.

38.     The principal also informed the teenage girl's mother that she believed the girl was embellishing her story.

39.     The School District received notice again in 2015 but again failed to take any action to protect its female students.

40.     Even a boy attending Salina Middle School was concerned enough to tell his mother about Horner's action towards the girls during the fall semester of 2015.

41.     The boy came home after school and told his mother of a girl that was sitting on Horner's lap.

42.     The boy told his mother the girl did not want to sit on Horner's lap but that Horner forced the girl to sit on his lap.

43.     The mother then called the principal of the Salina Middle School directly and discussed the issue on the phone.

44.     The principal of the Salina Middle School informed the mother that an entire group of boys had actually come forward and talked to the principal about Horner's actions towards the girls.

45.     Another mother met with both the principal of the Salina Middle School and the Superintendent of the School District at the same time to discuss her concerns of Horner when her daughter was in the 8th grade.

46.     Whenever learning about Horner's actions, the School District silenced anyone who spoke against Horner.

47.     The School District specifically told students not to discuss the issue with their parents.

48.     When a student was heard talking about Horner's actions in the school, the student was threatened with being sent to the office for discipline.

49.     Horner molested, made lewd comments, or inappropriately touched or felt the body or private parts of female students (including violations of 21 O.S. § 1123(A)(2)), including each of the Plaintiffs, while at the School District, on campus, and during school hours.

50.     The School District failed to implement and/or execute policies in regard to the reporting of sexual misconduct to state agencies to protect students from further abuse; to end the access to students of suspected predators; and the inadequacy of these polices resulted in the deprivation of Plaintiffs' constitutional, statutory, and common-law rights.

51.     The School District failed to ensure that all of its employees, including teachers and administrators, were properly hired, trained, retained, and supervised to perform their jobs.

52.     The School District is responsible for the acts and omissions of its employees, including its teachers and administrators, during the course and scope of their employment.

53.     The Salina Board of Education was and is responsible for the supervision of the School District and its teachers and employees and had control over the School District's teachers and employees.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Negligence (Negligent Hiring, Retention, Training, Supervision, and Premises Liability)**
**Against Defendant School District under the Oklahoma Governmental Tort Claims Act**

COME NOW the Plaintiffs and hereby adopt and include the foregoing statements and allegations as if they were fully stated herein, and for their First Cause of Action against the School District, allege and state:

54.     The School District is responsible for the negligence of their agents, servants, and employees while acting within the course and scope of their employment.

55.     The School District breached its duty to Plaintiffs, as parents and next friends, who entrusted their children to the School District *in loco parentis* and in a special relationship over these little girls.

56.     Defendant Horner, as an employee of the School District, breached his duty to Plaintiffs, as parents and next friends, who entrusted their children to Horner *in loco parentis* and in a special relationship over these little girls.

57.     The School District and Horner breached their duty of reasonable care as custodians of these young students and the special relationship that arose therefrom.

58.     Defendant failed in its duties to Plaintiffs by, *inter alia*:

   a.   Allowing Horner access to children after learning that he was abusing them;

   b.   Failing to report Horner to DHS and police after learning that he abused children;

   c.   Negligently retaining Horner as a teacher after Defendant knew or should have known of Horner's inappropriate sexual conduct toward one or more students;

   d.   Negligently failing to timely and adequately act upon and investigate the stated, perceived, or obvious inappropriate behavior by Horner towards one or more students;

e.  Failing to protect Plaintiffs from harm inflicted upon them while in  School District's control or control of its agents, employees, and persons authorized to be on campus;

f.  Negligently allowing Horner to be on premises;

g.  Negligently hiring Horner;

h.  Negligently developing and/or implementing, or failing to develop and/or implement, policies and procedures designed to protect its students from inappropriate sexual conduct;

i.  Negligently training its staff, and its students with regard to policies and procedures related to sexual harassment, sexual misconduct and inappropriate sexual conduct;

j.  Negligently supervising Horner;

k.  Failing to exercise reasonable care to disclose to students and/or their parents the existence of dangerous defects, such as locations where a student could be subjected to sexual misconduct, including behind doors, in hallways, and in classrooms, by an unsupervised sexual predator, known to Defendant, but where unlikely to be discovered by students;

l.  Failing to exercise reasonable care to keep the premises in a reasonably safe condition for the reception of students, such as by providing locations where a student could be subjected to sexual misconduct, such as behind doors, in hallways, and in classrooms, by an unsupervised sexual predator.

59.  Further, the lack of any mechanism or training to the students attending the School District to make complaints of inappropriate behavior and actions in an environment free

of retaliation and with reasonable assurances of confidentiality and safety resulted in the creation of an atmosphere in which the improper contact was permitted and allowed to occur.

60.     The School District failed to have in place procedures and policies for training, supervising, and educating its employees in the detection, reporting and/or supervision of alleged or suspected incidents of offensive acts and acts of sexual misconduct.

61.     To the extent that the School District had any procedures and policies for training, supervising and educating its employees in the detection, reporting and/or investigation of alleged or suspected incidents of offensive acts and acts of sexual misconduct in place, those procedures and policies were inadequate and likely to result in the violation of a student's constitutional rights.

62.     The School District failed to take sufficient remedial action to correct, eliminate and/or prevent the recurrence of the offensive and unconstitutional acts described above once its employees perceived, knew or had reason to believe that Horner posed a risk of sexual abuse.

63.     The School District had a duty to police the misconduct of its personnel under its immediate control and to protect the students from violations of the students' constitutional rights to bodily integrity and to be free from intrusions while attending a publicly mandated course of education.

64.     The aforementioned conduct by school officials was done within the scope of their employment and course of their performance of their official responsibilities at the School District, under the color of laws, statutes, ordinances, regulations, practices, customs and usage of the State of Oklahoma and the School District and utilized the respect and authority granted to them by state and local law.

65.     The School District had a duty to implement procedures and policies for training, hiring, supervising and educating its employees in the detection, reporting and/or investigation of alleged or suspected incidents of offensive and unconstitutional acts and misconduct.

66.     The School District failed to properly implement policies and procedures and/or follow its own procedures and policies with regard to screening, hiring, training, and supervision of its employees.

67.     The School District was negligent in regard to providing a safe and secure environment for its female students and was negligent in its dealings with school employees.

68.     The School District failed to have adequate policies and procedures in place to prevent the types of harm that was inflicted upon Plaintiffs.

69.     The School District failed to provide Plaintiffs with a means to voice their complaints and concerns without fear of reprisal.

70.     The School District's negligence, as described above, proximately caused Plaintiffs' injuries, severe emotional trauma and distress, pain and suffering and the damages sought by Plaintiffs herein.

71.     The School District failed to timely and adequately act upon and investigate the stated, perceived, or obvious inappropriate behavior by Horner towards one or more female students.

72.     The School District, through its agents, servants and employees, was negligent in its hiring, negligent in its training, negligent in its supervision and negligent in its retention of Horner.

73.     As a direct result of the negligence of the School District, through its agents, servants and employees, Plaintiffs were injured, both physically and mentally and have suffered damages.

WHEREFORE, Plaintiffs pray for judgment against the Defendant School District and Defendant Horner for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332, plus interest, attorney fees and costs and whatever further relief this court deems just and equitable.

## SECOND CAUSE OF ACTION
### Negligence *Per Se* Against Defendant School District

COME NOW the Plaintiffs and hereby adopt and include the foregoing statements and allegations as if they were fully stated herein, and for their Second Cause of Action against the School District, allege and state:

74.     The School District and its employees, and/or agents had a duty to report allegations of Horner's misconduct to the Oklahoma Department of Human Services ("DHS"). *See* 10A O.S. § 1-2-101(B)(1).

75.     That subsection requires "[e]very person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services."

76.     The Oklahoma Legislature promulgated the reporting requirements to prevent the type of injuries inflicted upon Plaintiffs.

77.     The Oklahoma Legislature stated this legislative purpose in 10A § 1-1-102(A)(3): "Because the state has an interest in its present and future citizens as well as a duty to protect those who, because of age, are unable to protect themselves, it is the policy of this state to provide for the protection of children who have been abused or neglected and who may be

further threatened by the conduct of persons responsible for the health, safety, and welfare of such children."

78.     Oklahoma's child abuse reporting laws express the State's strong public interest in protecting children from abuse by the policy of mandatory reporting of actual and suspected child abuse or neglect to appropriate authorities and agencies.

79.     The School District failed to report to the DHS, even though Defendant had information regarding Horner's misconduct that required reporting.

80.     The failure to report by the School District was the direct and proximate cause of the continued abuse of Plaintiffs.

81.     The failure to report by the School District caused Plaintiffs mental anguish and physical injury.

82.     The School District's failures to abide by its statutory duties is negligence *per se*.

WHEREFORE, premises considered, Defendant School District and its officials' failings as described above resulted in Plaintiffs suffering severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation. Plaintiffs pray for judgment against the Defendant School District, for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332, plus interest, attorney fees and costs and whatever further relief this court deems just and equitable.

### THIRD CAUSE OF ACTION
#### 42 U.S.C. § 1983 Violations

COME NOW the Plaintiffs and hereby adopt and include the foregoing statements and allegations as if they were fully stated herein, and for their Third Cause of Action against the School District, allege and state that under the Fourth Amendment and the Fourteenth Amendment, Plaintiffs have the right to Due Process and Equal Protection of the Law.

83.     At all times relevant hereto, it was clearly established that Plaintiffs had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

84.     The School District was a state actor acting under the color of state law.

85.     The School District denied Plaintiffs their rights to Due Process and Equal Protection of the Law by:

    a.   Failing to enact and implement adequate policies concerning sexual harassment, misconduct and abuse;

    b.   Failing to remove Horner;

    c.   Failing to prevent adolescents from being alone with Horner;

    d.   Failing to investigate Horner properly, before and after these referenced allegations;

    e.   Failing to hire, train, supervise, and retain Horner properly;

    f.   Failing to adequately train and supervise the its employees; and

    g.   Exhibiting deliberate indifference to the sexual misconduct directed at Plaintiffs.

86.     The School District has an unconstitutional custom or policy of:

    a.   Failing to report criminal misconduct;

    b.   Failing to investigate criminal misconduct;

    c.   Discounting the credibility of adolescents' allegations; and

    d.   Failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of adolescents.

87.     The policy is attributable to a policymaker.

88.   The resulting inadequate policies and resulting failure to train allowed Horner, as the School District's employee, to violate Plaintiffs' 4th Amendment rights and Plaintiffs' 14th Amendment rights to Equal Protection and Due Process.

89.   Molestation of female students at a school is a danger.

90.   An environment where an adolescent is feloniously touched, molested, and/or receives lewd or lascivious communications from an adult is a dangerous environment.

91.   The School District created a dangerous environment for its adolescents, including Plaintiffs.

92.   The School District, as a state actor, affirmatively acted to create, or increased the Plaintiffs' vulnerability to, or danger from, the misconduct of Defendant Horner.

93.   Plaintiffs were members of a limited and specifically definable group—namely, female, minors, and students.

94.   The School District created the danger or increased the Plaintiffs' vulnerability to the danger by at least effectively ignoring other allegations and not immediately removing Defendant Horner from its School District after receiving notice of his misconduct.

95.   The School District's conduct put Plaintiffs at substantial risk of serious, immediate and proximate harm. That risk included the risk of being abused while at the School District's middle school. Indeed, Defendant Horner abused Plaintiffs after the School District had actual notice of Horner's misconduct.

96.   The risk of danger was obvious or known to the School District.

97.   The School District's actions and inactions created an opportunity for Defendant Horner to engage in sexual misconduct.

98.   The School District acted recklessly in conscious disregard of that risk.

99.    The School District's conduct, when viewed in total, shocks the conscience.

WHEREFORE, premises considered, Defendant School District and the failings of it's officials and employees as described above resulted in Plaintiffs suffering severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation. Plaintiffs pray for judgment against the Defendant School District for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332 plus interest, attorney fees and costs and whatever further relief this court deems just and equitable.

### FOURTH CAUSE OF ACTION
### Violation of Title IX

COME NOW the Plaintiffs and hereby adopt and include the foregoing statements and allegations as if they were fully stated herein, and for their Fourth Cause of Action, allege and state:

100.    The School District receives federal financial assistance.

101.    The School District's disregard of the sexual misconduct of Horner was so severe and objectively offensive that it deprived Plaintiffs of educational opportunities and benefits provided by their public schooling.

102.    The School District created and/or subjected Plaintiffs to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

    a.  Plaintiffs were members of a protected class;

    b.  Plaintiffs were subjected to sexual harassment in the form of sexual pursuit and sexual misconduct by a person on campus of the School District;

    c.  Plaintiffs were subjected to harassment based on their sex; and

    d.  Plaintiffs were subjected to retaliation.

103.    Plaintiffs were subjected to a hostile educational environment created by the School District's lack of policies and procedures and failure to properly investigate and/or report sexual misconduct.

104.    The School District and its officials and employees had knowledge, including actual knowledge, of the sexual misconduct and the resulting harassment Plaintiffs suffered as a result of the School District's failure to notify law enforcement.

105.    Teachers and principals are appropriate persons to receive complaints for purposes of a Title IX claim.

106.    Horner's misconduct was a substantial danger and risk to the School District's female students.

107.    The School District had evidence of more than a single, uncorroborated report of inappropriate touching of a female student by Horner.

108.    The harassment suffered by Plaintiffs was severe, pervasive, and objectively offensive, as made evident by Horner feloniously touching multiple victims on multiple occasions.

109.    Further, the School District had actual notice of Horner's misconduct via communications to its employees, who were all acting within the course and scope of their employment by the School District.

110.    The School District acted with deliberate indifference by failing to properly investigate Plaintiffs' allegations and to inform law enforcement or other governmental officials. Defendant's inactions were clearly unreasonable in light of the known circumstances.

111.    The School District's actions and inactions caused students, including Plaintiffs, to undergo further misconduct by Horner and made them vulnerable to that misconduct.

112.    Defendant School District persisted in its action and inaction even after it had actual knowledge of the harm suffered by Plaintiffs.

113.    The School District's failure to promptly and appropriately respond to the alleged sexual harassment and sexual misconduct resulted in Plaintiffs, on the basis of their sex, being excluded from participation in, being denied the benefit of, and being subjected to discrimination in the the School District's education program in violation of Title IX.

114.    The School District failed to take immediate, effective remedial or preventative steps to resolve, investigate, or prevent further sexual assaults. Instead, the School District acted with deliberate indifference toward Plaintiffs.

115.    The School District's response was clearly unreasonable in light of the circumstances known to them.

116.    The School District's actions, including, but not limited to its failure to effectively and immediately investigate Horner's misconduct, to send students who alleged misconduct back to Horner's class where Horner was present, to abjectly disbelieve multiple victims, and to threaten students who disclosed Horner's misconduct was not reasonable responses to the substantial risk of sexual misconduct.

117.    The School District dismissed and marginalized allegations of Horner's sexual misconduct.

118.    In response to allegations of Horner's sexual misconduct, the School District did not conduct a legitimate investigation.

119.    The School District's subjective assessment of Horner's victims' credibility was an insufficient investigation in light of the facts reported to the School District by those victims.

120.    The School District could have exercised its inherent authority over school property to immediately prohibit Horner from entering school property and abusing Plaintiffs. It did not.

121.    The School District engaged in a pattern and practice of behavior that failed to fully investigate, alert, and protect students from sexual misconduct within the school district.

122.    Plaintiffs have suffered physical pain, emotional distress, and psychological damage.

123.    WHEREFORE, premises considered Defendant School District's actions were the direct and proximate cause of Plaintiffs being deprived of a safe and harassment-free educational environment. As a result of Defendant School District's actions and inactions, Plaintiffs have suffered and continue to suffer severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

### FIFTH CAUSE OF ACTION
#### Assault and Battery Against Defendant John Q. Horner, only

COME NOW the Plaintiffs and hereby adopt and include the foregoing statements and allegations as if they were fully stated herein, and for their Fifth Cause of Action, allege and state:

124.    Defendant Horner acted without the consent of the Plaintiffs.

125.    Defendant Horner acted intentionally with the intent of making harmful contact with Plaintiffs.

126.    Defendant Horner's actions resulted in harmful contact with Plaintiffs.

127.    As a direct result of the assault and battery, Plaintiffs have suffered injuries and damages.

128. The actions of Defendant Horner were reckless and in disregard for the rights of others, including the rights of Plaintiffs.

129. Plaintiffs are entitled to recover actual and punitive damages against the Defendant Horner, individually, to deter him, and others similarly situated, from this behavior in the future and to punish him for his socially unacceptable behavior.

WHEREFORE, Plaintiffs pray for judgment against the Defendant, John Q. Horner, individually, for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332, plus interest, attorney fees and costs and whatever further relief this court deems just and equitable. Additionally, if permitted under the facts of this case and by Oklahoma law, Plaintiffs further pray for an award of punitive damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 United States Code §1332.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress Against Defendant John Q. Horner, only

COME NOW the Plaintiffs and hereby adopt and include the foregoing statements and allegations as if they were fully stated herein, and for their Fourth Cause of Action, allege and state;

130. The physical and mental abuse that Defendant Horner gave to Plaintiffs was done maliciously and sadistically.

131. Defendant Horner's actions were extreme and outrageous and beyond the bounds of decency.

132. Defendant Horner's actions were atrocious and utterly intolerable in a civilized society.

133. As a direct result of Defendant Horner's actions, Plaintiffs were severely traumatized, beyond which a reasonable little girl could be expected to endure.

134.    Defendant Horner intentionally and/or recklessly caused their emotional distress.

135.    The actions of Defendant Horner were intentional and/or reckless, with disregard for the rights of others, including the rights of Plaintiffs.

136.    Plaintiffs are entitled to recover punitive damages against Defendant Horner to deter him, and others similarly situated, from this behavior in the future and to punish him for his socially unacceptable behavior.

WHEREFORE Plaintiffs pray for judgment against the Defendant, John Q. Horner, individually, for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332, plus interest, attorney fees and costs and whatever further relief this court deems just and equitable. Additionally, if permitted under the facts of this case and by Oklahoma law, Plaintiffs further pray for an award of punitive damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 United States Code §1332.

Respectfully submitted,

CHASE MCBRIDE, OBA #32061
RITCHIE, ROCK, MCBRIDE & ATWOOD
P.O. Box 246
Pryor, OK 74362
Phone: (918) 825-4558
Fax: (918) 825-1623
Email: CMcBride@RRMALaw.com

CAMERON SPRADLING, OBA #8509
500 North Walker Avenue, Suite 140
Oklahoma City, OK 73102
Phone: (405) 605-0610
Fax: (405) 605-0615
Email: Cameron@CameronSpradling.com

21

TOD S. MERCER, OBA #14157
MERCER LAW FIRM, P.C.
500 East Choctaw Avenue
McAlester, Oklahoma 74501
Phone: (918) 420-5850
Fax: (918) 420-5855
Email: Tod@TodMercerLaw.com

ATTORNEYS FOR PLAINTIFFS